Morris Kominsky *vs.* Ernest Durand.

APRIL 23, 1940.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

388

CONDON, J. This action of trespass for false imprisonment is here on plaintiff's exception to a ruling of a justice of the superior court sustaining defendant's demurrer to

plaintiff's third replication to defendant's special plea in justification, and also on his exceptions to certain rulings of another justice of that court who presided at the trial which resulted in a verdict for the defendant.

The plaintiff alleges in his declaration that on June 24, 1938, in the city of Woonsocket, he was seized and laid hold of with force and violence by a police officer of that city, acting under the direction of the defendant, and compelled to go to the police station where he was detained and imprisoned without any reasonable or probable cause for one and one half hours. The defendant pleaded the general issue, and also a special plea in justification as follows:

> "And for a further plea in his behalf, the defendant says the plaintiff ought not to have his aforesaid action against him, the defendant, because he says that before the said time when, etc., to wit, on, etc., the 24th day of June, A. D. 1938, in the City of Woonsocket, County of Providence and State of Rhode Island, the said defendant, while engaged upon his official duties as a police officer, received a report from one Ernest Lamontagne, a reputable business man of said City of Woonsocket, that a 1935 Plymouth Sedan bearing Rhode Island registration plates K-2878 had been driven from Rathbun Street, in said City of Woonsocket, without the consent of the owner of said motor vehicle; that the said defendant, relying upon the said report and acting in good faith, believed the said report of the said Ernest Lamontagne to be true, by reason of which premises, the defendant at the said time, when, etc., had good and reasonable cause and ground to believe and did believe that a felony had been committed; that the defendant thereupon notified other officers of the said City of Woonsocket to investigate the alleged felony, and, within a short time, another officer appeared at the Police Station with the plaintiff who was reported by the said officer to be the driver of car number K-2878, by means whereof the defendant had reasonable and probable cause to suspect and did suspect that the plaintiff had committed the said

felony; that the said defendant explained the situation to the said plaintiff who then produced his name, address, license and registration number; that the said defendant promptly and diligently investigated the ownership of the said automobile and the identification of the said plaintiff, and, upon learning that the plaintiff was the owner of the said automobile, told him of the result of the investigation; that the plaintiff was at the Police Station about one and one-half hours, which time was used in making the investigation and was a reasonable time; all of which are the supposed trespasses in the said plaintiff's declaration mentioned, and of this the defendant is ready to verify, wherefore he prays judgment."

Plaintiff's third replication to this special plea alleged that under the facts set forth in said special plea it was the duty of the defendant, under the law, to take him, the said plaintiff, before a magistrate or other proper judicial officer, but that he, the defendant, wrongfully discharged plaintiff from custody and thereby became a trespasser *ab initio*. Defendant's demurrer to this replication was sustained on the ground that the law did not charge the defendant with the duty as alleged by the plaintiff. In support of this ruling, the justice of the superior court relied expressly on the last sentence in sec. 75, chapter 407, general laws 1923, (now § 68, chap. 625, G. L. 1938). Section 75 reads as follows:

"Every officer authorized to make an arrest for any criminal offense, may arrest without complaint and warrant any person who commits any criminal offense in his jurisdiction, when such officer has view of the same, or when the offender is taken or apprehended in the act by any person. Such officer may also arrest without complaint and warrant any person for whom a warrant of arrest has been issued, although such warrant at the time of such arrest may not be in the possession of such officer. Any person so arrested may be detained a reasonable time not exceeding twenty-four hours, for the purpose of making an investigation concerning such person, but no person so arrested shall be detained

longer than twenty-four hours without complaint being made against him before some proper court of justice. If the officer making the arrest shall, at any time within the said twenty-four hours satisfy himself that there is no ground for making a criminal complaint against the person arrested, such person shall thereupon be discharged from custody."

We are of the opinion that the justice of the superior court erred in applying the last sentence of that section to the circumstances of the instant case. To understand the effect which that provision of the section had upon the common law it is necessary to read the section as a whole. Every sentence thereof is intimately related. They are to be read together and when they are it is obvious that the section is intended to identify specific occasions when certain requirements of the common law with reference to arrest may be dispensed with.

The first sentence applies solely to an officer authorized to make an arrest for any criminal offense and then only when such officer has view of the offense or when the offender is taken or apprehended in the act by any person. The third sentence is related to the first and second, as appears from its opening words: "Any person so arrested", which refer to an arrest made under certain circumstances by an officer without a warrant having been issued therefor or made without the possession of the warrant at the time of the arrest where a warrant had been issued. This sentence marks out the limit of time within which the "person so arrested" may be detained, for the purpose of investigation, without danger of the arresting officer being charged with unreasonable detention of such person before bringing him before some proper court of justice.

The fourth and last sentence is likewise related to the third sentence as is evident by the words "the *said* twenty-four hours", which plainly refer to the period of time set

out in the preceding sentence and inferentially to the "person so arrested". (italics ours) The whole sentence, as is indicated by its structure, is quite definitely tied to the preceding portion of the section and is intended to excuse an officer, who has made an arrest without a warrant under the conditions set out in the first sentence, from the obligation which he was under at common law to bring the arrested person before a magistrate or other proper judicial officer without unreasonable delay.

This section became a part of the statute law for the first time in 1915. In that year G. L. 1909, chap. 354, entitled "Of Proceedings in Criminal Cases" was amended in its entirety and six new sections added thereto by P. L. 1915, chap. 1261, among which was the section under consideration. That section has continued in the general laws in the same form, except as to number, in the revisions of 1923 and 1938, and it does not appear to have been construed heretofore by this court, although it is cited, and the first sentence thereof quoted and relied on in *State* v. *Chester*, 46 R. I. 485, 129 A. 596.

Prior to the enactment of this section, the common law governed the scope of an officer's authority in this state, to arrest without a warrant and to detain the arrested person in custody. That law permitted an officer to arrest without a warrant on reasonable suspicion based on his own knowledge that a felony had been committed or upon information from some "creditable person". *Wills* v. *Jordan*, 20 R. I. 630. In all other cases, except in the case of a misdemeanor amounting to a breach of the peace committed in his presence, an officer had no authority, at common law, to arrest without a warrant. Burdick's Law of Torts, § 37, 257 (a), 304; 6 C. J. S. Arrest, § 6, 584. Coupled with the authority to arrest went an imperative obligation on the officer to bring the arrested person before a magistrate

without unreasonable delay. Especially was this true where the arrest had been made without a warrant.

In such a case this court many years ago emphatically observed that: "Undoubtedly the law requires an officer who makes an arrest without a warrant, to make a complaint for the offence . . . ." *Douglass* v. *Barber,* 18 R. I. 459, 462. But the court also pointed out therein that the failure of the officer in that case to *procure* from the magistrate a complaint and warrant after he had brought the arrested person before the magistrate was not decisive of the question of the legality of the officer's participation in making the arrest. He was not to be held liable for false imprisonment merely because the magistrate declined, after hearing the charge, to issue a complaint. Having made complaint to the magistrate, the officer, they said, could do no more.

Later in the case of *Newhall* v. *Egan,* 28 R. I. 584, at page 589, this court cited and relied on the *Douglass* case and said: "When an officer makes an arrest, without warrant, it is his duty to take the person arrested, without unnecessary delay, before a magistrate or other proper judicial officer having jurisdiction, in order that he may be examined and held or dealt with as the case requires . . . ; but to detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal." See also 25 C. J., False Imprisonment, § 61 (7), 491; 6 C. J. S., Arrest, § 17 b., 618; Burdick's Law of Torts, § 37, 260, p. 307.

Most of the cases which have invoked these principles of the common law have arisen over the question whether the arresting officer had delayed unreasonably in performing this obligation, of taking the arrested person before a magistrate, and not over whether the obligation itself existed. There is no doubt that such an obligation does exist at common law. The only question in the instant case is whether the last sentence of sec. 75 exempts arresting offi-

cers from such common-law obligation under all circumstances or only under those set out in the section. We are clearly of the opinion that such exemption extends only to an officer who has detained a "person so arrested" as indicated in that section.

The plaintiff in the instant case was not arrested for an offense committed in the view of the defendant nor was the plaintiff taken or apprehended by any person in the act of committing said offense; and no warrant for his arrest had been issued when he was arrested. Hence, the plaintiff was not a "person so arrested" under any of the circumstances set out in sec. 75. The instant case is, therefore, governed by the principles of the common law as laid down in *Newhall* v. *Egan, supra,* upon which plaintiff relied in his third replication.

This replication questioned the legality of the defendant's special plea in justification of his arrest and detention of the plaintiff, and was, in effect, a demurrer to that plea. There may be some question, under the strict rules of pleading, whether it was properly pleaded as a replication; but, inasmuch as defendant's demurrer thereto searches the record, he has thereby put the court upon inquiry as to the validity of his special plea. We are of the opinion that, from our construction of sec. 75, the plea is bad; and that, since its sufficiency in law was thus brought into question by the defendant's demurrer to the replication, it should have been overruled by the justice of the superior court.

As a final objection, however, the defendant contends that plaintiff is not entitled to be heard on his bill of exceptions because he has failed to file with it a transcript of the evidence. Defendant's argument in support of this objection relates only to plaintiff's exceptions to the rulings of the justice of the superior court who presided at the trial. His contentions do not comprehend the exception which

we have just decided and sustained. A proper understanding of that exception and a decision thereon was not in any degree dependent upon the evidence, but was a pure question of law apparent from the pleadings and the ruling of the justice of the superior court thereon. Where the question raised is solely one of law having no relation to any of the facts in the case not contained in the papers, such as the construction of a statute, a transcript of the evidence is entirely unnecessary. *Bannon* v. *Bannon,* 44 R. I. 468.

For the reasons above stated, plaintiff's exception to the ruling of the justice of the superior court on defendant's demurrer is sustained; plaintiff's other exceptions to rulings of the trial justice are laid aside without consideration; and the case is remitted to the superior court for a new trial.

*Alfred H. Lake,* for plaintiff.

*Sidney Silverstein, John R. Higgins,* for defendant.